THE STATE AUTOMOBILE MUTUAL INS. ASSN. *v.* FRIEDMAN.

(Decided December 2, 1929.)

*Messrs. Merrick & Walsh,* for plaintiff in error.
*Mr. Sidney B. Fink,* for defendant in error.

SULLIVAN, J. This cause is here on error from the municipal court of Cleveland, and the parties stood in the reverse order below.

As a precedent consideration of the main question here, it appears that on October 11, 1928, a default judgment in the sum of $1,000 was recovered in the common pleas court by the plaintiff, Mary Friedman, against one Harry Shevorsky, on a policy of liability insurance on an automobile. At the expiration of thirty days, suit was brought by the plaintiff against Harry Shevorsky and the State Automobile Mutual Insurance Association, setting up the judgment, the policy of insurance, the nonsatisfaction of the judgment, and the fact that the necessary thirty days had expired from the rendition of the judgment. The following language in the answer of the insurance company is important in the consideration of the case as bearing upon the allegations of the petition and the identity of the automobile:

"Defendant admits that Harry Shevorsky was on the day of said accident insured by the State Automobile Mutual Insurance Association of Columbus, Ohio, against liability of suit or judgment for personal injuries occasioned while said Harry Shevorsky was driving the automobile so insured."

"That the judgment referred to in plaintiff's petition was obtained upon default of the said Harry

Shevorsky, of which default, the pendency of said action, and the rendition of said judgment, this defendant had no notice or knowledge whatsoever. Defendant denies that said policy insures against or covers the judgment above mentioned."

A reply was filed by plaintiff alleging that the insurance company received due notice of the pendency of the action wherein default judgment had been secured, and further alleging that the company knew, or should have known, of the default judgment.

Now there is evidence in the record that a former solicitor and agent, one Alexander Silber, who was not at the time of the matters and things complained of in the employ of the company, but who had acted as solicitor at the time of the issuance of the policy, had received notice of not only the accident itself, but had received from Shevorsky, the insured, the process papers in the litigation, and that, notwithstanding he had ceased to be an employee or solicitor or agent, he went to the office of the insuring agency and informed the cashier, one Mr. Callahan, of the accident and the lawsuit, and delivered the papers served upon the insured, and it appears further from the evidence that Mr. Callahan was the cashier of the insuring company or association, and in addition thereto, was an executive in the office, to whom matters of the nature under discussion were submitted, and that he was the only person in the office of the association itself who appeared to be in charge thereof.

There is a conflict in the testimony between the assured and Silber as to the turning over of the papers to Silber, but there is credible evidence on the part

of Silber that he received these process papers and delivered them to the company, under the terms of the policy. There is only one conclusion to come to upon this question, and that is that, inasmuch as Mr. Shevorsky could not have been made a defendant in court without the service of process, he must have received the necessary summons, and any other papers in connection therewith served upon him by the sheriff, and this conclusion appears clear because, according to the unquestioned testimony, he notified Mr. Silber of the accident and the pendency of the suit against him.

Now it is argued that this notice to Silber was not in compliance with the terms of the policy, because Silber had no relationship at the time with the company. The question must be considered in another aspect, however. Under the record there is no question that Silber became the instrumentality by which the company had received notice of the accident and the process papers relating to the suit that the company was to defend under the terms of the policy. It is immaterial what the relationship between Silber and the association was, if the notice and the papers themselves got to the company. The fact that he had once been agent or solicitor of the association, and had ceased so to be, does not alter the fact that he assumed to act for the company, and, when the company received the notice and the papers, it to that extent at least ratified the instrumentality of the agency by which it obtained notice of the accident and the suit. Any instrumentality other than Silber would have been sufficient, because the real question is, did the association or company receive the notice required by the provisions of the

policy? Consequently it is our judgment that under credible evidence in the record there was a substantial compliance with the insurance contract.

It is argued that there is no credible proof in the record as to the identity of the property insured, but a glance at the statement of defense shows that the following language is used: "While said Harry Shevorsky was driving the automobile so insured." Therefore the only question at issue seems to be whether the assured notified the defendant company of the pendency of the action and the rendition of the judgment, and whether notice was given to the company as required. Our judgment is that a reliance upon the record forces an answer to these questions in the affirmative.

The pending action was brought under Section 9510-4, General Code, which provides that a judgment creditor is entitled to a direct action against the insurance company subsequent to the obtaining of a judgment against the assured, and after the expiration of thirty days from the rendition of the judgment. Of course, in order that the judgment creditor may recover, the conditions in the contract of insurance pertaining to the notice of the accident and the suit brought against the assured are material, and should be complied with, and we think the record in the case here so shows. Sustaining the record is *Stacey* v. *Fidelity & Casualty Co. of New York,* 114 Ohio St., 633, 151 N. E., 718.

Conditions precedent must be proven by the testimony of the plaintiff who seeks to recover, but we do not think that as to conditions subsequent the same rule applies. In the instant case the defendant admits the issuance and lawfulness of the policy.

Concerning the distinction between conditions precedent and subsequent we cite the following authorities:

"A clause in a New York standard form policy of fire insurance, providing that proofs of loss shall be rendered to the company within sixty days after the fire, does not constitute a condition precedent, the failure to perform which would preclude a recovery under the policy, where there is no provision in the policy declaring that such failure renders the policy void. * * *

"Where, in an action for recovery under a policy of fire insurance, the defendant company sets up separate defenses in each of which there is a general denial and a specific denial, the general denials will be considered as limited and restricted to such particulars as are pointed out in the specific denials and the only issues tendered will be those raised by the specific denials." *Wood, Exr.*, v. *Connecticut Fire Ins. Co.*, 26 O. D. (N. P.), 450, 17 N. P. (N. S.), 273.

"The requirements in an insurance policy, under which a certificate of insurance is issued to a member, are that in case of an accident he 'shall, within ten (10) days after the date of such accident, send a notice in writing' to the officers of the company, and that in case of death 'notice of said death * * * which death notice shall be in addition to the notice of the accident:' Held, the giving of the notice of the accident by the insured was not a condition precedent to the right of the beneficiary to recover in case of the death of the insured." *Gibbs* v. *United Commercial Travelers of America*, 14 Ohio App., 439.

As to the question whether or not the plaintiff was bound by the statement of Shevorsky that he did not turn the papers over to Silber, we cite *Hurley* v. *State,* 46 Ohio St., 320, 21 N. E., 645, 4 L. R. A., 161.

A party is not bound by the unfavorable testimony of his own witness, but may prove his case by other evidence. He is not precluded from proving any fact relevant to the issue by any competent evidence, though it be a direct contradiction of the testimony of the former witness called by him.

One salient fact in the record is the absence of any denial on the part of the association as to the testimony concerning notice of the accident and the delivery and receipt of the process papers. That Silber had once been an agent of the association strengthens the position of the plaintiff, because it was only natural that the assured should turn to him in order to comply with the terms of the policy as to notice and the delivery of the summons in the suit brought by the plaintiff, and the real question as heretofore noted is not whether Shevorsky selected the wrong person in Silber, but whether, having done so, the notice of the accident and knowledge of the suit in question were brought home to the company to the extent that there was a substantial compliance with the terms of the policy, even under the theory of the argument of able counsel for the insurance company, both in his brief and orally.

Holding these views, the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

VICKERY, P. J., and LEVINE, J., concur.